### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAURO SARMIENTO, M.D., *Plaintiff*, v. CHS TX, INC., *Defendant* | Civil Action No. 24-cv-1233-ABA |

### MEMORANDUM OPINION

This case arises out a dispute between Plaintiff Mauro Sarmiento, M.D. ("Plaintiff" or "Dr. Sarmiento") and his former employer, CHS TX, Inc. (d/b/a YesCare; "Defendant" or "YesCare"). Dr. Sarmiento's employment contract required 60 days' notice if either party wished to terminate the agreement. ECF No. 2-1 at 3. Dr. Sarmiento notified YesCare in late November 2023 that he intended to resign. ECF No. 2 ("Compl.") ¶ 13. On December 14, 2023, approximately five weeks before the end of the notice period, YesCare terminated Dr. Sarmiento "effective immediately." *Id.* at ¶ 14; ECF No. 2-2 at 1. Dr. Sarmiento has sued, contending that YesCare breached the 60-day notice provision, which he contends constituted a breach of contract and violation of the Maryland Wage Payment and Collection Law (Md. Code, Lab. & Empl. §§ 3-501–509; "MWPCL"). Compl. ¶¶ 41, 47, 58. He seeks payment of the salary he would have received during the approximately five weeks between his termination date and the end of the 60-day period triggered by his notice, along with statutory damages and attorneys' fees. *Id.* at ¶¶ 42–47.

1

YesCare does not dispute that Dr. Sarmiento has stated a claim for breach of contract. But it has moved to dismiss one of his MWPCL claims (Count 2), arguing that the sum Dr. Sarmiento seeks under this count does not qualify as "wages." ECF No. 11. Drawing all reasonable inferences in Plaintiff's favor at the pleadings stage, Plaintiff has sufficiently stated a claim that they were. Accordingly, the Court will deny YesCare's motion to dismiss Count 2 of the complaint.

## BACKGROUND[1]

Dr. Sarmiento was hired by Corizon Health[2] in September 2020 as Statewide Medical Director for the State of Maryland. Compl. ¶ 6; ECF No. 2-1 at 1. The offer letter outlined Dr. Sarmiento's base salary, an annual retention bonus for the first three years of employment, and an annual "discretionary bonus." ECF No. 2-1 at 1. The offer letter also included a notice clause that stated: "It should be understood that either party may end the employment relationship provided a sixty (60) day notice is given, unless it is a termination with cause." *Id.* at 3. Because Dr. Sarmiento accepted that offer letter, the terms of the letter constitute the employment agreement at issue. *See* ECF No. 11-1 at 2 (Defendant agreeing that Dr. Sarmiento's "employment agreement" provided that "unless he was terminated for cause, 60 days' written notice was required before the employment relationship could be terminated").

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint[.]" *King v. Rubenstein,* 825 F.3d 206, 212 (4th Cir. 2016).

[2] YesCare acquired Corizon Health and is the successor company of Corizon Health. Compl. ¶ 5.

Dr. Sarmiento began his role as Statewide Medical Director in November 2020, and served in that role for approximately three years. Compl. ¶¶ 2, 13. On or about November 20, 2023, Dr. Sarmiento provided YesCare with written notice that he intended to resign. *Id.* ¶ 13. The sixty-day notice period would have lasted through January 18, 2024. *Id.*

On December 14, 2023, YesCare provided written notice to Dr. Sarmiento that "after careful consideration, the decision has been made to terminate your employment with YesCare, effective immediately." ECF No. 2-2 at 1. Thus, Dr. Sarmiento was terminated five weeks before the end of the sixty-day notice period. The termination letter did not indicate that the termination was "for cause," and YesCare did not offer a basis for the immediate termination in a subsequent conversation with Dr. Sarmiento. *Id.*; Compl. ¶¶ 16, 18. Dr. Sarmiento sought payment for his salary for the five weeks between his termination date and the effective date of his resignation, but YesCare has refused to pay this sum. Compl. ¶¶ 20-21.

Dr. Sarmiento filed his complaint in the Circuit Court of Montgomery County, Maryland; YesCare removed the complaint to this Court. Compl. at 1; ECF No. 1; 28 U.S.C. § 1441(a). The complaint alleges three causes of action: breach of contract (Count 1), a failure to pay wages from the five-week period under the MWPCL (Count 2), and a failure to timely pay out the balance of Plaintiff's accrued paid time off under the MWPCL (Count 3). Compl. ¶ 35-58. Under all three counts, Dr. Sarmiento seeks damages, interest, and costs. *Id.* ¶¶ 41, 47, 58. Under counts 2 and 3, Dr. Sarmiento also seeks attorneys' fees and

expenses. *Id.* ¶¶ 47, 58. *See* Md. Code, Lab. & Empl. § 3-507.2(b) ("If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."). Defendant filed a partial motion to dismiss, seeking dismissal of Count 2. ECF No. 11.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). As noted above, in considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212. Notably, a motion under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

## DISCUSSION

The question presented by Defendant's motion is whether the five weeks of salary Dr. Sarmiento would have been paid if YesCare had not terminated his employment constitutes "wages" under Section 3-505 of the MWPCL. Plaintiff contends they were because the payment he seeks was "promised in exchange

4

for services" and was "earned through services actually rendered prior to [] termination." ECF No. 14 at 4. Defendant argues they are not "wages" because Plaintiff "did not perform the work necessary to earn the compensation before he was terminated." ECF No. 11-1 at 5.

### A. Legal Standard for "Wages" Under The MWPCL

In pertinent part, the MWPCL requires an employer to pay "all wages due for work that the employee performed before the termination of employment[.]" Md. Code, Lab. & Empl. § 3-505(a). The statute defines "wage" as "all compensation that is due to an employee for employment[,]" *id.* § 3-501(c)(1), and further provides that "'[w]age' includes" the following:

> (i) a bonus;
> (ii) a commission;
> (iii) a fringe benefit;
> (iv) overtime wages; or
> (v) any other remuneration promised for service.

*Id.* § 3-501(c)(2). Although the phrase "promised for service" appears as part of item (v) ("any other remuneration promised for service"), the Supreme Court of Maryland has interpreted that phrase to apply to each of the numbered items, such that a "bonus," "commission" or "fringe benefit" only qualifies if it was "promised for service." *See Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 303 (2001) ("[T]he wages which an employee is due, and which must be paid on termination of employment, consist of all compensation, and any other remuneration, that the employee was promised in exchange for his work.").

Some forms of employment remuneration unquestionably qualify as "wages," such as an hourly wage earned for hours worked during employment.

The Maryland courts have wrestled with whether other particular forms of compensation qualify. On one side of the ledger, the Supreme Court of Maryland has held that "incentive fees" that an employee earned during his employment, but that did not become due for payment until after the employee resigned, qualified as "wages," even though the employment manual expressly conditioned payment on employment at the time payment became due. *Medex v. McCabe*, 372 Md. 28, 33-34, 37 (2002). That was because the fees "were related directly to sales made by the employees during a defined fiscal year[,]" and the plaintiff "had performed all the work necessary to earn the fees[.]" *Id.* at 37. The court concluded that these incentive fees were "wages due" under the MWPCL, notwithstanding the provision in the manual, because the employee "had performed all the work necessary to earn the fees" and, thus, his right to the payment had vested at that point. *Id.* at 37, 42. In reaching that conclusion, the Supreme Court rejected the employer's argument that the incentive fees were "akin to a bonus for continued employment." *Id.* at 36.

On the other side of the ledger, in *Whiting-Turner* the Supreme Court held that a "bonus payment" that the employer had "recommended and approved" but not yet "delivered"—and that was not part of any employment agreement—was not a "wage" within the meaning of the statute. 366 Md. at 298-99, 305. There, when the employee was hired, the parties agreed to compensation of a weekly salary "and, after two years of employment and depending upon the profitability of the company, profit sharing." *Id.* at 299. Well before hitting the two-year mark for eligibility for profit sharing, the plaintiff reported to a company

6

vice president that he was considering leaving the company. *Id.* The vice president replied, "I have a profit sharing check for you in my pocket. All you have to do is tell me you are staying." *Id.* at 299-300. The Supreme Court held that the bonus payment did not qualify as a wage because he had not satisfied the two-years-of-service condition to be *entitled* to profit sharing. *Id.* at 305-06. Had he satisfied that requirement, and if "the financial condition of the [company] justified it," there would have been "no doubt" of his "entitlement" to the payment, which would have been enforceable as wages because it "was promised as part of [his] compensation package." *Id.* Because the plaintiff in *Whiting-Turner* had not been employed for two years—the threshold agreed to in advance—the payment the company vice president offered if he would agree to stay with the company was "merely a gift, a gratuity," not compensation that was "promised as part of the compensation for employment[.]" *Id.* at 305, 306.

Under the same reasoning that led to that conclusion in *Whiting-Turner*, in *Catalyst Health Solutions, Inc. v. Magill*, stock options that were only "conditionally granted" and thus "unvested" at the time of an employee's termination were not wages. 414 Md. 457, 460-61 (2010). As the Supreme Court explained, "only when wages have been promised as part of the compensation for the employment arrangement and *all conditions agreed to in advance* for earning those wages have been satisfied, will Section 3-505 requiring payment of wages due apply." *Id.* at 473. In other words, for a payment to have been "due" to the employee, Md. Code, Lab. & Empl. § 3-501(c)(1), all "conditions agreed to in advance for earning those wages" must "have been satisfied." *Catalyst*, 414

7

Md. at 473 (emphasis omitted). In *Catalyst*, the employment agreements at issue "explicitly conditioned the right to exercise the grant of stock options on continued employment until a date that was expressly defined"; the employee's failure to "meet all of the agreed upon conditions to exercise his stock options" meant that the options payments did not qualify as "wages" under the statute. *Id.* at 477-78.

Maryland courts have also established that under some circumstances, payment that is solely available *after* termination can nonetheless constitute remuneration for "work that the employee performed *before* the termination of employment," *see* Md. Code, Lab. & Empl. § 3-505(a) (emphasis added). *See, e.g.*, *Stevenson v. Branch Banking & Trust Corp.*, 159 Md. App. 620, 644 (2004) (noting that a severance benefit may "represent[] deferred compensation for work performed during the employment"). This issue has specifically arisen in the context of employment agreements that include post-termination non-competition covenants. In *Aronson & Co. v. Fetridge*, the employee's employment agreement provided that if his employment were terminated, he would be "entitled" to certain "Terminating Employee Compensation" ("TEC"). 181 Md. App. 650, 658 (2008). Those were wages because they were "due under the terms of the Employment Agreement." *Id.* at 674. The employer contended that the existence of a post-termination non-compete meant the TEC was not a "wage." *Id.* at 666-67. But under the terms of the employment agreement, severance was not expressly *contingent* on compliance with the non-compete—the employee "was entitled to continue receiving the TEC, even if he violated the covenant not

8

[to] compete." *Id.* at 667-68. Thus the compensation was awarded only for "work that the employee performed before" termination and constituted a wage notwithstanding the non-compete. *Id.* at 668. In contrast, in *Stevenson*, the remuneration at issue was explicitly tied to the former employee's compliance with a post-employment non-compete; that meant the payment did not constitute payment "for work that the employee performed *before* the termination of employment," *see* Md. Code, Lab. & Empl. § 3-505(a) (emphasis added). 159 Md. App. at 645-46. Because the compensation in *Stevenson* "was explicitly a *quid pro quo* for this non-compete, Stevenson could not possibly 'perform all the work necessary to earn' the Termination Compensation until after her 13 month employment ended." *Id.* at 646 (quoting *Medex*, 372 Md. at 36-37); *see also Blood v. Columbus US, Inc.*, 237 Md. App. 179, 182, 193 (2018) (holding that termination compensation did not qualify as wages because "Blood's Non–Competition Clause Compensation, when tied with the *quid pro quo* promise not to compete . . . is not payment 'for work [Blood] performed before the termination of employment'") (alteration in original).

In short, where remuneration (1) has been "promised," Md. Code, Lab. & Empl. § 3-501(c)(1), (2) is in fact "due" under the terms of the pertinent employment agreement, *id.*, meaning the employee has complied with "all conditions agreed to in advance," *Catalyst*, 414 Md. at 473 (emphasis omitted), and (3) the "work" that was required of the employee to earn the remuneration was performed "before the termination of employment," Md. Code, Lab. & Empl. § 3-505(a), the remuneration constitutes a "wage" actionable under the MWPCL.

9

### B. Plaintiff's Claim Under Count 2 States a Claim

Here, the employment agreement, after laying out the salary, schedule, benefits, and other terms, provided as follows: "It should be understood that either party may end the employment relationship provided a sixty (60) day notice is given, unless it is a termination with cause." ECF No. 2-1 at 3. And as discussed above, Dr. Sarmiento gave notice, and planned to remain employed for the duration of the 60-day notice period, but Defendant terminated the employment before then. Thus, the question presented is whether the salary that Dr. Sarmiento would have earned during the balance of the 60-day period constitutes payment that was "promised" and "due[,]" Md. Code, Lab. & Empl. § 3-501(c)(1), and was based on work performed "before the termination of employment," Md. Code, Lab. & Empl. § 3-505(a).

Drawing all reasonable inferences in Plaintiff's favor, *see King*, 825 F.3d at 212, Count 2 states a claim upon which relief can be granted. Plaintiff has alleged that (a) the parties understood the 60-day notice provision to constitute an agreement, *i.e.* a "promise" within the meaning of the statute, that, if he were to give notice of resignation, he would be paid for 60 days past that date; (b) that right to payment vested, and thus became due, when Plaintiff gave his 60-day notice and continued to work; and (c) his right to that payment arose from having worked for Defendant prior to giving notice. *See, e.g.*, Compl. ¶ 21 (alleging that his employment agreement entitled him to payment of his "salary" during the five weeks between his termination and the end of his notice term); *id.* ¶ 23 (alleging that Defendant did not contend that the termination was for cause); *id.*

10

¶ 44-46 (alleging that Defendant was "obligated" under the employment agreement to pay Plaintiff for 60 days' worth of work following notice of resignation).

As explained above, whether compensation in connection with a termination constitutes a "wage" turns in large part on whether the parties *agreed* that the payment at issue would constitute compensation for work performed before termination. Here, Plaintiff alleges the employment agreement reflects an agreement of 60 days' pay upon termination without cause or adequate written notice. *See, e.g.*, Compl. ¶¶ 21, 23, 44-46. Defendant contends the employment agreement does not comprise a promise of payment for any period not actually worked. *See* ECF No. 11-1 at 6.[3] As noted above, Defendant has not moved to dismiss Count 1, which alleges that Defendant breached the employment agreement. At least in the context of Dr. Sarmiento's employment agreement, the breach-of-contract and MWPCL Count 2 claims go hand in hand. If the failure to pay Dr. Sarmiento's salary for the duration of the notice period constitutes a breach of contract, as alleged in Count 1, and if the parties' intention at the time they entered into the employment contract was that payment for the duration of the notice period was compensation for work performed before the termination of employment, it would follow that such

---

[3] YesCare states "Plaintiff does not allege that he earned the money he now seeks *before* YesCare terminated his employment." ECF No. 11-1 at 6. Yet Dr. Sarmiento's interpretation that the employment agreement obligated YesCare to pay his salary through the notice period, or provide him with the opportunity to work through the notice period, fairly constitutes an allegation that he *did* earn the money he seeks prior to termination.

11

payment was remuneration "promised for service" as part of the employment contract. *See, e.g.*, *Whiting-Turner*, 366 Md. at 305 (explaining that "[t]he conditions of employment[,]" including "what fringe benefits attach[,]" are matters "determined in advance of the employment[,]" and "[o]nce a bonus, commission or fringe benefit has been promised as a part of the compensation for service, the employee would be entitled to its enforcement as wages."). Conversely, if the failure to pay Dr. Sarmiento for the weeks he did not work does not constitute a breach of contract, then it would likely follow that such payment was not "promised for service," and therefore could not be recovered as wages under the statute. *Cf. Catalyst Health Sols.*, 414 Md. at 477, 480 (reasoning that an employee's stock options were promised compensation, but the ability to exercise them was explicitly conditioned on employment through a certain date, so they did not qualify as "wages" under the MWPCL).

Plaintiff's complaint alleges sufficient facts that, if proven, could establish that the right to remuneration had vested at the time he gave notice or as of his termination. Defendant suggests that for the right to the disputed five weeks of salary to vest, Dr. Sarmiento would have had to have completed the five weeks of work in the period between his termination and the end of his notice period. *See* ECF No. 19 at 11 ("Here, Plaintiff did not do everything required to earn the amount he requests as wages under Count II. Rather, Plaintiff complains about payment owed *had* he continued working."). Yet, if the payment for the full sixty-day notice period is part of the compensation that Defendant "promised for service," and if the failure to pay the full amount due to early termination other

12

than for "cause" is a breach of contract, that right could vest when Dr. Sarmiento did "everything required to earn" the payment through the notice period—that is, when Dr. Sarmiento demonstrated a willingness to work through his sixty-day notice period. Compl. ¶¶ 13, 37–38. *Cf. Medex*, 372 Md. at 42 (reasoning that a contractual provision requiring an employee to remain employed at the time of payment had no effect on the date at which the wages vested because "to hold otherwise would place the rights of employees to these wages at the whim of the employer, who could simply terminate any at-will employee whose incentive fees it didn't wish to pay.").

Because a Rule 12(b)(6) motion does not resolve factual disputes or the merits of a claim, *see Edwards*, 178 F.3d at 243, this Court does not reach the issues, for example, of whether the offer letter's notice provision requires payment in lieu of adequate notice or whether and when the right to compensation vested on their merits. Nonetheless, under the Rule 12(b)(6) standard, Plaintiff's allegations in Count 2 are sufficient to survive Defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (ECF No. 11). An appropriate order follows.

Date: November 6, 2024                    _____/s/_____
                                          Adam B. Abelson
                                          United States District Judge